PER CURIAM.
On September 16, 1959, plaintiff qualified himself to run as a police juror from the Eighth Ward of St. Tammany Parish in the Democratic Primary, scheduled for December, 1960. The defendant committee sustained a challenge filed to his candidacy on the ground that he was not a resident of the Eighth Ward and therefore was not qualified to hold Eighth Ward office, Art. 8, Section 13, LSA-Constitution; and the committee accordingly disqualified him. This suit was brought to require the defendant parish committee to recognize plaintiff as a resident of the Eighth Ward and duly qualified candidate for the nomination of police juror thereof. The District Court dismissed the suit after trial, and plaintiff appeals.
The facts are relatively uncontradicted. For many years plaintiff and his neighbors of Section Ten (10), T 8 S, R 14 E, have registered as voters of the Eighth Ward and have voted for the ward offices thereof. In fact, plaintiff himself ran *781 for and was within 42 votes of being elected Eighth Ward Police Juror in 1956, without challenge to his residency. But by official ordinances of the Parish of St. Tammany, the last of which was enacted in 1921, the western boundary of Ward Eight at the area in question is described as the eastern section line of Section Ten, so that plaintiff and his neighbors actually reside west of the official boundary line of Ward Eight and, according to the official ward boundaries, their residences lie in Ward Nine.
The crux of plaintiff’s argument, aside from the equity of his case, is that in 1951 certain action of the police jury had the effect of changing the boundaries of Ward 8 so as to include his own residence within same.
On October 15, 1951, plaintiff, his wife, and seventeen of their neighbors (all residents of Section Ten, T 8 S, R 14 E) petitioned the parish police jury as follows:
“We, the undersigned voters, taxpayers of the Eighth Ward, St. Tammany Parish, object to being disqualified as voters of the Eighth Ward because some politicians cannot dictate how we should vote. The residents of this part of the Eighth Ward have voted in the Eighth Ward for the past 52 years. This is the second time this has been attempted and Mr. B. T. Carroll, police juror from the Ninth Ward and George F. Bancks, police juror from the Eighth Ward agreed that they should remain as they were, and continue to vote in the Eighth Ward.
“Now, the argument has arisen again that we were not qualified voters in the Eighth Ward. We petition your honorable body that we remain voters in the Eighth Ward.
“Respectfully.”
(Signatures omitted)
In response to this petition, a resolution was unanimously adopted on October 18, 1951, by the police jury, shown by its minutes as follows:
“A petition was presented to the Body by Mr. Bancks, from voters and taxpayers of the 8th Ward, requesting the Police Jury to confirm the right of these voters to be recognized as citizens and voters of the 8th Ward.
“Moved by Mr. Bancks, seconded by Mr. Esquinance, that the Police Jury confirm the residents signatory to the said petition as residents and voters of the 8th Ward and that the petition, together with the confirmation by the Police Jury, to be published in the St. Tammany Farmer and that a copy of these proceedings to be served upon the Parish Registrar.
“Unanimously carried.”
This resolution was duly promulgated and published in the parish journal.
Plaintiff’s able counsel contends that this ordinance was intended to and had the effect of changing the parish boundary so as at least to include the residences of the signatories of the petition. These residential properties, per their applications for homestead exemption (filed for many years as showing the properties in the Eighth Ward, as did the assessment rolls), formed a contiguous tract with irregular boundaries carved out of Section Ten, T 8 S, R 14 E, immediately adjoining on its east the Eighth Ward properties as shown by the previous official parish ordinances.
In support of his argument, counsel points out that a police jury may by two-thirds vote change the boundaries of any ward without any specific formalities. LSA-R.S. 33:1224. He argues most strongly that the legislative intent is clearly shown to have been to transfer the petition’s signatories and their residences into the Eighth Ward and thus, officially, to change the boundaries so as to recognize the long-established usage, according to which they considered themselves and were considered residents of the Eighth Ward. *782 He further urges most forcefully that the acts of legislative bodies should be construed to have meaning and validity, rather than to be meaningless or unconstitutional, when due to ambiguity or vagueness such contrasting constructions are open to the court.
We are unable to be persuaded by these forceful arguments that it is open to this court to construe the resolution or ordinance adopted on October 18, 1951, as an official 'change of the ward boundaries. It confirmed the right of the signatories to be recognized as "residents and voters” of the Eighth Ward, it is true. But to recognize this resolution as having the effect for which contended, when it does not so provide, would constitute a usurpation of legislative powers by this court.
No territorial boundaries are fixed or mentioned by the resolution, and it would be mere supposition on our part to attempt to draw a ward boundary line according to homestead applications or residences. The resolution does not for instance indicate that it recognized any change in the ward residence of any non-signatories residing on the lands of those signing, and we do not think it is open to us to conclude that such was the intention of the police jury, the effects of the resolutioh being specifically limited to “the residents’ signatory to said petition.” (No authority is cited, nor is it contended, that a police jury has the power to recognize ward non-residents as residents and voters of another ward.)
For the above and foregoing reasons, the judgment dismissing plaintiff’s suit is affirmed.
Affirmed.